McKinney, J.,
delivered the opinion of the Court.
1. We are satisfied that the complainant had a valid title to the property, to her sole and separate use.
2. We are also of opinion, that under the power in the deed from Topp to complainant, she was possessed of the power to dispose of the property in any mode known to the law.
8. The testimony of Douglass, P. W. Bradford and Mrs. Condon, tends to establish, that complainant did not execute the deed freely and voluntarily, but yield *58 ed to the fear of a threat of a criminal prosecution against her husband, and was induced to execute the deed to save the disgrace to the family.
But this is not the ground of the bill — nor is it consistent with it.
The sole equity of the bill — which is sworn, to — is, the fraud in procuring her to execute an absolute deed, instead of a 'mortgage, as had been agreed on.
The bill distinctly, explicitly, and repeatedly states, the consent and voluntary agreement of complainant, to execute a mortgage for the security of the six thousand dollars, to be advanced by Maxwell. She does not pretend, that her assent to do this, was at all induced by fraud, coercion of threats, undue influence, or any improper motive ; any such assumption is plainly repudiated on the face of the bill.
If it were to be conceded, then, that the proof sufficiently establishes, that the execution of the deed was procured by threats and undue influence, she could not, perhaps, on that ground, claim relief in the face of the sworn statements of the bill. We incline to the opinion, that she would be estopped, to say, that she did not voluntarily execute the paper as a mortgage, or security to Maxwell, for the $6000, to be advanced by him.
And even if the fact of threats and undue influence were sufficiently proved — which we are not prepared to admit — the complainant would not be entitled to avoid the deed altogether; but, upon the admissions of the bill, the property ought to be held liable, to reimburse Maxwell the money advanced.
*59 But, in the view we have taken of the case, it is not necessary to pursue the discussion in this aspect.
Upon the whole case, we are of opinion, that the complainant was induced to execute the deed, believing it to be merely a mortgage, or security, and not an absolute conveyance, and that a fraud was practised upon her, in which Maxwell, Cherry, and her husband, all participated. The proof of Mrs. Condon, and the statement of the Deputy Clerk, who took her ac-knowledgement of the deed — as proved by Messrs. Yer-ger & Brown — shows that the deed was not read, nor was she otherwise informed of its contents, before signing it.
It also appears, that there was a concerted and secret plan to procure a conveyance from her. This is proved by Douglass; and the subsequent conduct of the parties, strongly corroborated his statement.
The husband of complainant, (in whom she seems to have had entire confidence,) deceived her: He assured her that nothing but a security to Maxwell, was required. Yet he can scarcely be supposed to have been ignorant of the nature of the conveyance. He was in the power of Cherry; and, in his extremity, he chose rather to practice a deception upon his wife, than to hazard the threatened prosecution for a felony, which he, perhaps, really feared.
She was deceived by Maxwell, in whom she trusted as a friend. He was the mere instrument of Cherry. He was making no loan of his own money, as he pretended ; he was seeking no conveyance for his own indemnity, as complainant was induced to believe. But, on the contrary, while professing to act as the friend of *60 complainant, and her unfortunate family, was really seeking to take from her, property, not as security to Cherry, but, as the sequel proved, to vest it in him absolutely.
Such, we think, is the effect of the proof in this record.
And upon this state of facts, while we do not think the complainant can avail herself of the fraud, to avoid her just liability; we are of opinion, that she is entitled to have the deed declared to the operative, only as a mortgage, and to be let in to redeem the same. Asking equity, she must do equity ; and upon her own showing in the bill, her plain equity is, to be allowed, to redeem the mortgage. This measure of relief gives her all the benefit she can justly claim; it is carrying out her own free and voluntary agreement, and relieves her from the consequences of the fraud complained of.
The decree will be reversed, and a decree will be made conformable to the rights of the parties, as herein declared.
An account will be stated of the amount advanced by Maxwell to complainant, and also the amount paid to Topp, with interest thereon. The defendant, Cherry, will be charged with the full amount of the annual rents of the property, from the 26th of April, 1851— the date of the conveyance to Maxwell — with interest, at annual- rents, deducting therefrom the annual taxes, and insurance paid on the property. That is to say, he will be charged with rent for part of the first and the second year, after the date of the conveyance to Maxwell; for the rent of which period, Maxwell took the obligations of Simon Bradford, and which were by *61 him passed to Williamson, by whom they are now held for the use of Cherry. H-e will, likewise, be charged with rent, in addition, from the time of the order of the Chancellor, made by Cherry's procurement, putting the property in the hands of a receiver, to be rented, pending this litigation. But for the intermediate time, between the periods stated, while the complainant was assuming dominion over the property, as owner, and receiving, or contracting to receive the rents, she is not entitled to recover rents from the defendant, Cherry.
The costs of the cause will be paid by defendant, Cherry.
And if the balance found to be due of the mortgage debt, shall not be paid within ninety days from the confirmation of the Master’s report, the property shall be sold, on a credit of twelve and eighteen months, without the right of redemption ; security being required for the purchase money, and a lien retained until the same shall be fully paid. And out of the proceeds, the amount due to defendant Cherry shall be paid, and the residue shall be settled to the sole and separate use of the complainant.
The entire costs of the cause will be paid by the defendants.